IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID JONES,                          )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )          Case No. 08-1185-MLB-DWB
                                      )
GREYHOUND LINES, INC. and             )
RONALD L. BREEDLOVE,                  )
                                      )
                    Defendants.       )

## ORDER

Before the Court is Defendants' Motion for Medical Examination and supporting memorandum. (Docs. 22, 23.) Plaintiff has responded in opposition by filing a Motion to Strike and for Protective Order with supporting memorandum. (Docs. 27, 28.) Defendants responded to the Motion to Strike (Doc. 28) and filed a reply to Plaintiff's response. (Doc. 30.) Having reviewed the submissions of the parties, the Court is prepared to rule on these pending motions.

## FACTUAL BACKGROUND

Plaintiff filed the current negligence action on June 24, 2008. (Doc. 1). He alleges he was injured on September 4, 2007, while riding as a passenger in a bus owned and/or operated by Defendant Greyhound Lines, Inc., and driven by Defendant Ronald L. Breedlove. He contends that his injuries were caused by the negligence of Defendants. Defendants admit that Plaintiff was a passenger on the

bus in question and admit that he has sustained certain injuries.  (Docs. 6, 8.)

Defendants generally deny the remainder of Plaintiff's allegations, including their

negligence.  (*See generally*, *id*.)

On February 20, 2009, the Court entered its Scheduling Order, which

included a deadline of July 15, 2009, for the parties to complete all physical or

mental examinations pursuant to Fed. R. Civ. P. 35.  (Doc. 12, at 4.)  Defendants

filed their Motion for Medical Examination (IME motion) on May 27, 2009,

requesting an Order requiring Plaintiff to appear for medical examination on June

17, 2009, by Dr. Michael Ryan at the office of Neurology Consultants Chartered in

Shawnee Mission, Kansas.  (Doc. 22.)  Plaintiff responded in opposition to the

motion, including a Motion to Strike and for Protective Order.  (Doc. 27).  Plaintiff

argues that Defendants did not confer with Plaintiff's counsel prior to filing their

motion in violation of D. Kan. Rule 37.2, that Defendants do not meet their

burdens pursuant to Fed. R. Civ. P. 35, and, in the alternative, that certain

safeguards be entered by the Court if an IME is allowed.  (*See generally* Doc. 28.)

## DISCUSSION

**A.    Plaintiff's Motion to Strike**.

As an initial matter, Plaintiff moves to strike Defendant's IME motion,

arguing that it is, in fact, a Rule 37 Motion to Compel.  (Doc. 28, at 2-3.)  Plaintiff

continues that because defense counsel failed to confer with Plaintiff's counsel prior to filing the IME motion, Defendants' IME motion "must be stricken" and a protective order should be entered "precluding the unilaterally scheduled visit" with Defendants' chosen physician.  (*Id*., at 4.)

Plaintiff states that "[a] motion for a Rule 35 examination is one of the motions to which Rule 37.2 applies."  (*Id*.)  In reaching this conclusion, Plaintiff relies on a recent decision from this District in which Magistrate Sebelius held that the defendant failed to satisfy the duty to confer requirements of Fed. R. Civ. P. 37. *Kankam v. University of Kansas Hosp. Auth*., No. 07-2554-KHV, 2008 WL 4369315, at *3 (D.Kan. Sept. 23, 2008).  In the Court's opinion, the holding in *Kankam* is clearly distinguishable.

D. Kan. Rule 37.2 states that a court "**will not entertain a motion to resolve a discovery dispute** pursuant to Fed. R. Civ. P. 26 through 37 . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."  (Emphasis added.)  In *Kankam*, defense counsel specifically filed a Motion to Compel after Plaintiff's counsel stated "she believed an examination was not appropriate . . . and plaintiff would not agree to submit to an examination." 2008 WL 4369315, at *1.  In the present matter, on the other hand, there is no

3

evidence before the Court that Plaintiff's counsel had refused the IME *prior* to Defendants filing the motion at issue – as such, there was no "discovery dispute" about which to confer at the time Defendants filed their IME motion.

The Court anticipates Plaintiff will argue that the only reason he did not previously refuse to agree to an IME is because Defendants failed to seek his approval prior to filing the present motion.  Plaintiff has cited no authority, however, and the Court is aware of none, for the proposition that a defendant is generally *required* to confer with opposing counsel prior to filing a Rule 35 motion for an IME.  Nowhere in the ***Kankam*** opinion is such a conclusion reached.[1] Further, Fed. R. Civ. P. 35 and 37 contain no language equating a Rule 35 motion for a medical examination to a Rule 37 motion to compel.  To the contrary, Rule 35 is conspicuously absent from the types of disclosures enumerated in Fed. R. Civ. P. 37(a)(3)(B).[2]

Even assuming the Court were to hold that conferring is *per se* required prior to filing any Rule 35 IME motion, striking Defendants' motion on this basis would not be an efficient use of judicial resources.  The Court anticipates that Defendants

---

[1]  In fact, even though the ***Kankam*** Court held that the defendant did not fulfill its Rule 37.2 duty to confer, Judge Sebelius decided to address the motion to compel on its merits.  *Id.*, at *3.

[2]  On the other hand, Fed. R. Civ. P. 30, 31, 33, and 34 are all specifically listed in Rule 37.

4

would simply confer with Plaintiff's counsel regarding the issue, Plaintiff's counsel would again refuse to agree to an IME, and Defendants would file *another* motion on the issue, and the parties would be back before the Court, having made no progress on the issue.  As such, the Court will address Defendants motion on its merits, consistent with the ruling in ***Kankam***.

Plaintiff's Motion to Strike is, therefore, **DENIED**.  The Court's ruling herein should not be interpreted to hold that a Rule 35 examination cannot be the subject of a Rule 37 motion to compel.  Rather, the Court simply does not agree with Plaintiff's position that any motion filed pursuant to Rule 35 automatically becomes a Rule 37 motion to compel.

**B.    "In Controversy" and "Good Cause" Requirements**.

The discussion now turns to Defendants' Motion for Medical Examination. (Doc. 22.)  Fed.R.Civ.P. 35 covers independent medical examinations and provides, in relevant part:

> The court where the action is pending **may order a party whose mental or physical condition** . . . **is in controversy** to submit to a physical or mental examination by a suitably licensed or certified examiner . . .  The order (A) may be made only on **motion for good cause** and on notice to all parties and the person to be examined; and (B) **must specify the time, place, manner, conditions, and scope of the examination**, as well as the person or persons who will perform it.

Fed.R.Civ.P. 35(a) (emphasis added).  The granting or denying of a motion for a physical examination rests in the sound discretion of the trial court.  ***Bucher v. Krause***, 200 F.2d 576 (7th Cir. 1953), *cert. denied*, 73 S.Ct. 1141, 345 U.S. 997, 97 L.Ed. 1404, *reh'g denied* 74 S.Ct. 17, 346 U.S. 842, 98 L.Ed. 363.  The rule authorizing physical examination of a party shall be liberally construed in favor of granting discovery.  ***Eckman v. University of Rhode Island***, 160 F.R.D. 431 (D.R.I. 1995).

In ***Schlagenhauf v. Holder***, 379 U.S. 104, 118-19, 85 S.Ct. 234, 242-43, 13 L.Ed.2d 152 (1964), the Supreme Court held that

> the 'in controversy' and 'good cause' requirements are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but requires an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

The Court noted that these two requirements are necessarily related and that there are situations where the pleadings alone are sufficient to meet these requirements. "A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119.

6

Although Plaintiff "claims to have been injured in the incident giving rise to this suit," he argues that his injury is not in "controversy." (Doc. 28, at 5.) He contends that because Defendants have not "done anything to call into question" the medical opinions of Plaintiff's doctors, his injuries – although they exist – are not in "controversy." (*Id*.) Plaintiff's reasoning is unsupported by case law and is unpersuasive.

Plaintiff's Complaint specifically alleges that his "serious" injuries include "a traumatic brain injury and concussion; a fracture to his cervical spine with spinal cord impingement; deep vein thrombosis; speech impairment; and upper and lower extremity weakness and numbness." (Doc. 1, at 4.) He alleges that he has experienced "back and neck pain; headaches; cognitive impairment; and . . . a loss of quality of life." (*Id*.) He also alleges to have incurred "economic losses, in the form of medical expenses, as a result of the incident which caused his injuries." (*Id*.) Plaintiff brings two negligence claims against the Defendants, whose actions he contends were the "direct and proximate" cause of his injuries. (*Id*., at 5-6.)

This is clearly a case in which Plaintiff claims personal injury as a result of Defendants' negligence and Defendants generally deny their alleged negligence and/or culpability. (Docs. 6, 8.) Although Defendants admit that Plaintiff was injured, they do not admit the nature and extent of Plaintiff's injury in their

Answers.  (*Id.*)  Thus, because Plaintiff's physical condition is in dispute, the Court

finds that the "in controversy" requirement of Rule 35 has been met.

As for the "good cause" element, Defendants argue that "Plaintiff's medical

records give indication that plaintiff may have systemic neurological problems as a

result of diabetes or other pre-existing condition."[3]  (Doc. 23, at 1.)  Further,

Plaintiff has brought claims against the Defendants for negligence, which he claims

caused his injuries.  That, in and of itself, places Plaintiff's "injury clearly in

controversy and provides the defendant with good cause for an examination to

determine the existence and extent of such asserted injury."  ***Schlagenhauf***, 379

U.S. at 119.  Thus, the Court **GRANTS** Defendants' Motion for Medical

Examination (Doc. 22), subject to the parameters and limitations discussed below.

**C.     Safeguards**.

"In determining what kinds of examinations to authorize, the court must

balance the desire to insure the safety and freedom from pain of the party to be

examined against the need for the facts in the interest of truth and justice."  8A

Charles A. Wright & Arthur R. Miller, ***Federal Practice and Procedure*** §2235, at

494 (2d ed. 1994).  Plaintiff requests the following safeguards be entered: (a) he

---

[3]  Unlike ***Kankam***, the injuries claimed by Plaintiff in this case are not simple
"garden variety" damages.   2008 WL 4369315, at *4.

not be compelled to complete a written questionnaire at the examination; (b) the examination is to be scheduled at a convenient date, time, and location for Plaintiff; (c) no invasive procedures or manipulations be allowed (including injections, radiographic studies, EMGs, EEGs) and Defendants are required to provide advance written notice of the testing to be sought; (d) the examination should be videotaped; (e) Defendants not be allowed to seek additional examinations by other doctors; and (f) certain documents be provided to Plaintiff's counsel within 14 days of the examination.  (Doc. 28, at 9.)  Each request will be discussed in turn.

      (**a**)    **written questionnaire**.

Plaintiff argues that a patient history questionnaire submitted in conjunction with his IME is "nothing more than additional interrogatories being submitted under the guise of an 'independent' medical evaluation."  (*Id*., at 9.)  Without citing any authority on point, he continues that requiring him to fill out such a form "deprive[s him] of his right to counsel and effectively denie[s him] the opportunity to object to the requests."  (*Id*.)  He requests that he be provided "any such questionnaire at least two weeks in advance of his examination."   (*Id*., at 10.) Plaintiff's request is unreasonable.

The Court agrees with Defendants' assertion that "[i]ntake questionnaires are common in physicians' offices all across the country." Every day, patients in doctors' offices throughout the United States fill out such forms without the aid of counsel and without two weeks to do so. Further, the Court cannot surmise why Plaintiff's counsel would be in a better position to answer questions regarding Plaintiff's medical history than Plaintiff would be himself.

Further, this Court dealt with a similar issue in the matter of *Lynn Reese v. Lone Star Steakhouse*, No. 00-1180-JTM, (Doc. 62, Sept. 18, 2001). In that case, the Court held that IME doctors must be permitted to take a plaintiff's history and to ask such other questions as will enable them to formulate an intelligent opinion concerning the nature and extent of the plaintiff's injuries. *See Simon v. Catille*, 174 So.2d 660 (La.App. 1965), *app. denied,* 176 So.2d 145, 247 La. 1088, *cert. denied,* 86 S.Ct. 325, 382 U.S. 932 (doctor must be permitted to elicit history himself from patient). "'To restrict a physician from questioning a patient during a physical [or mental] examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions.'" *Hertenstein v. Kimberly Home Health Care, Inc*., 189 F.R.D. 620, 626 (D.Kan. 1999) (*quoting Romano v. II Morrow, Inc*., 173 F.R.D. 271, 273 (D. Or. 1997) (addressing the issue in the context of a physical examination)).

Simply stated, an examining physician under Rule 35(a) must be allowed to ask the examinee such questions as are necessary to form an opinion about his condition and the cause of the alleged injury.  The Court assumes Dr. Ryan will exercise sound professional discretion and will not pursue private information unrelated to the purpose for the examination.  The Court notes, however, that any statements in the doctor's report which Plaintiff believes to be based on inappropriate questions which were not germane to the examination may be objected to prior to or at the time of trial by means of a motion *in limine*.  Further, as for written questionnaires, the Court instructs that Dr. Ryan is limited to providing Plaintiff with his standard patient questionnaire(s) rather than a questionnaire created specifically for Plaintiff and/or with the assistance of defense counsel.

(**b**)     **date, time, and location of examination**.

Plaintiff's counsel argues that Plaintiff "is not medically fit to travel from California, where he resides, to Shawnee Mission, Kansas" for the medical examination.  (*Id*., at 10.)  The only evidence supporting this assertion is an affidavit *from Plaintiff's counsel*, indicating that Plaintiff told counsel that his pain is "currently so severe" as to render him unable to travel.  (Doc. 28-5, at 2.)  The affidavit continues that Plaintiff told his counsel that he is "certain that one or more

of the physicians with whom he is treating for said pain and symptoms are of the same opinion." (*Id.*)  Suffice it to say, this is wholly insufficient to establish Plaintiff's inability to complete travel related to this lawsuit.

Plaintiff made the choice to file the present lawsuit *in Kansas* and requested that the case be tried in the United States District Court for the District of Kansas in Wichita, Kansas.  (Doc. 1, at 7.)  Absent explicit, written travel restrictions placed by a licensed physician who continues to treat Plaintiff, the Court will not entertain any request to have Plaintiff's IME occur anywhere other than Kansas.  Given Plaintiff's ability to travel from coast to coast for medical treatment (Doc. 30-2, at 4-5) – and the fact that Plaintiff will be required to travel to Kansas for any trial in the present matter – the Court will regard with skepticism any medical restrictions placed on Plaintiff's ability to travel.

As such, the Court finds that Dr. Ryan's office in Shawnee Mission, Kansas, is an appropriate location for the IME will require that Plaintiff return to Kansas for the examination.  Absent a clear showing that Plaintiff is indigent, Plaintiff will be required to pay for his own transportation to the examination.  ***Baird v. Quality Foods, Inc.***, 47 F.R.D. 212 (E.D. La. 1969); *see also* ***Landry v. Green Bay & Western R. Co.***, 121 F.R.D. 400, 401 (E.D. Wis. 1988).

As for the date and time of the examination, because of the timing of the present motions in relation to the currently scheduled date for Plaintiff's IME, the Court is <u>not</u> requiring Plaintiff to present himself to Dr. Ryan on June 17, 2009. Rather, on or before **June 19, 2009**, defense counsel is ordered to provide Plaintiff's counsel with three possible dates for a proposed IME with Dr. Ryan, and Plaintiff may select the most convenient of those dates.  <u>However, the parties are instructed to schedule the examination to occur on or before **July 15, 2009**</u>, in conjunction with the deadline set in the Court's Scheduling Order of February 20, 2009.  (Doc. 12, at 4.)

       **(c)**      **invasive procedures or manipulations and advance written notice of the testing**;

A Rule 35 Order for an IME is required to specify the "manner, conditions, and scope of the examination" to be performed.  Fed. R. Civ. P. 35(a)(2)(B). Defendants' IME motion requests only that Plaintiff be ordered to appear and "cooperate by giving a history, a past history, stating his complaints, and allowing a physical examination of those parts of the body that plaintiff claims were injured in the accident, including but not limited to a neurological examination of the central nervous system and the peripheral nervous system."  (Doc. 23, at 1-2.) Defendants continue that Plaintiff be ordered to submit "to non-invasive testing requested by the doctor in his medical discretion."  (*Id*., at 2.)

Plaintiff complains that this description provides "no real parameters" as to what the examination will entail.  (Doc. 28, at 11.)  Inexplicably, Plaintiff then refers the Court to a prior ruling of the Kansas Supreme Court regarding an IME in which the physician was alleged to have sexually battered the patient.  (*Id.*, citing *Smith v. Welch*, 265 Kan. 868 (1998).  Although Plaintiff's counsel "has not [sic] reason to suspect that Dr. Ryan or any other physician selected . . . would do sexually inappropriate things with Mr. Jones," Plaintiff's counsel contends that "there is no way to adequately protect once is [sic] in the specially retained expert's exam room" absent a listing of the specific examinations to be permitted. (*Id.*)  Plaintiff then requests "at least 1 month" advance notice of "a written explanation of the specific examination to be performed and the specific tests to be done."  (*Id.*, at 12.)

The Court anticipates that at least a portion of the tests to which Plaintiff may be subjected will be determined as a result of the symptoms and complaints he exhibits while being examined by Dr. Ryan.  Even so, the Court is confident that Dr. Ryan will be able to enumerate a list of tests and procedures that he anticipates he *may* choose to perform on Plaintiff.  Such a list shall be provided to Plaintiff at least seven (7) days prior to the scheduled examination.  To the extent Plaintiff's counsel anticipates objecting to certain tests requested by Dr. Ryan, counsel should

14

be aware that the Court does not intend to second-guess Dr. Ryan's medical methodology and finds exams such as blood tests, x-rays, EMGs, EEGs, and MRIs, to be generally considered safe and accepted in the medical community.

(**d**)   **videotaping the examination**.

Plaintiff contends that videotaping his IME "ensures that the recitations of the questions, answers and the scope of the examination are accurate." (*Id.*)  He continues that doing so would protect "both the examiner and the examinee." (*Id.*, at 13.)  Plaintiff cites two cases from the Colorado Supreme Court in support of his request, but no authority from any federal circuit or district court.  Most likely, this is because federal courts have not inclined to allow taping of Rule 35 examinations.

In *Favale v. Roman Catholic Diocese of Bridgeport*, the United States District Court in Connecticut was faced with a plaintiff's request to have a Rule 35 mental examination videotaped.  235 F.R.D. 553, 557 (D. Conn. 2006).  In this analogous situation, the *Favale* Court held that

> Rule 35 does not address whether the examination should be recorded. *See* Fed.R.Civ.P. 35(a).  'Most courts analyze a request for recording in the same way that they evaluate a motion to permit the presence of an attorney.' Indeed, 'Courts have generally permitted the tape recording of examinations only where they have held that there is a right to have an attorney present at an examination, or where special circumstances have been

15

shown.' Further, a recording device, like an observer, could 'constitute a distraction during the examination and work to diminish the accuracy of the process.'

. . .

Further, the court finds that in this case, recording the examination would run contrary to Rule 35's purpose of providing a 'level playing field,' because the record does not show that the defendant received a tape recording of plaintiff's treatment session. Accordingly, plaintiff has not established good cause to have the examination recorded because she has not provided the court with special circumstances that differentiate her case from others in which Rule 35 examinations are sought.

*Id.*, at 557 (internal citations omitted).

In ***Greenhorn v. Marriott Intern.***, this District ordered that an independent mental examination be audio-taped, but only after the plaintiff enumerated legitimate concerns, supported by credible evidence, regarding the typical conduct of the psychiatrist in question during similar, prior examinations. 216 F.R.D. 649, 654 (D.Kan. 2003). Plaintiff in the present matter has failed to provide the Court with any special circumstances or concerns that would provide adequate justification for videotaping Dr. Ryan's examination. Likewise, he has provided no justification for allowing "an independent third party [to] be permitted" to accompany him "for purposes of observation." (Doc. 28, at 14.) As this District held in ***Greenhorn***, "the presence of a third party 'can only threaten to turn the

16

examination into a more adversarial process than it should be.'" 216 F.R.D. at 654

(*quoting* ***Stoner v. New York City Ballet Co***., No. 99 Civ. 0196 (BSJ)(MHD), 2002

WL 31875404, at *5 (S. D. N. Y. Dec. 24, 2002)).  Thus, these requests are denied.

      **(e)**    **Defendants not be allowed additional examinations by other
doctors**.

      Plaintiff argues that "[h]aving to submit to physical examination by someone

with whom he has no physician-patient relationship is a significant burden."  (*Id.*)

He therefore requests that he "not be subjected to additional Rule 35 examinations"

beyond that of Dr. Ryan.  (*Id.*)  Defendants "suggest that such an issue should be

decided by the Court, in the Court's discretion, at the time such additional

examination is requested."  (Doc. 30, at 8.)  The Court agrees.

      Prior to reviewing Dr. Ryan's conclusions, Plaintiff's request is premature.

This Court has allowed multiple IMEs of the same plaintiff in certain cases

previously.  *See* ***Kimberlyn Holt v. Wesley Medical Center***, No. 00-1318, Doc.

238.  Based on the unpersuasive arguments contained in Plaintiff's memorandum,

the Court can see no justification for preemptively prohibiting additional IMEs

should Defendants decide to make such a request at some point in the future.

Plaintiff's request is, therefore, denied.

      **(f)**     **providing documentation  to Plaintiff's counsel**.

Plaintiff requests that he is entitled to a list of documents generated during or relating to Dr. Ryan's Rule 35 examination.  (*See* Doc. 28, at 14-15.)  In response, Defendants state only that they "agree" that they "must produce a copy of Dr. Ryan's report."  (Doc. 30, at 8.)  Defendants make no mention of the other documents listed by Plaintiff, which include, but are not limited to, all bills or invoices rendered by Dr. Ryan in this case, Plaintiff's intake/medical history forms, and a copy of any dictation made by Dr. Ryan.  (Doc. 28, at 14-15.)  Because Defendants have not even discussed Plaintiff's request of these other documents, the Court can only surmise they have no objection to providing the same.  As such, Plaintiff's request is granted and copies of all written documents and test results from the examination shall be provided to Plaintiff.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Medical Examination (Doc. 22) is **GRANTED**, subject to the limitations and/or parameters discussed more specifically above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 27) is hereby **DENIED** while her Motion for Protective Order (Doc. 27) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS FURTHER ORDERED** Plaintiff David Jones shall present himself for neurological examination by Dr. Michael Ryan at the office of Neurology

Consultants Chartered, Antioch Hills Building, 8800 W. 75th Street, Suite 100,

Shawnee Mission, Kansas, 66204, on a date and time mutually agreeable to the

parties and Dr. Ryan, but in no event after **July 15, 2009**.  At least seven (7) days

prior to the scheduled examination, Defendants shall provide Plaintiff's counsel

with a list of the procedures and examinations Dr. Ryan anticipates he *may* perform

on Plaintiff.  Such tests may include, but shall not be limited to, blood tests, x-rays,

EMGs, EEGs, and MRIs, and/or any other examinations or procedures that are

generally accepted in the medical community.  Within **14 (fourteen) days** of

completion of the examination, Defendants will provide Plaintiff's counsel with all

relevant documentation generated during and as a result of said examination.

All reasonable costs associated with the physical examinations will be paid

by Defendants.  Plaintiff will, however, be required to pay for his own travel and

related expenses; he will not be reimbursed by Defendants for any time away from

work resulting from this examination.

Dated at Wichita, Kansas, this 12th day of June, 2009.


　  s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge


19