## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVID JONES,                                )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )        Case No. 08-1185-MLB-DWB
                                            )
GREYHOUND LINES, INC.,                      )
and RONALD BREEDLOVE,                       )
                                            )
                    Defendants.             )
_____            )

## MEMORANDUM AND ORDER

The following motions are pending before the Court:

>    1.    Defendants' Motion to Strike (Doc. 62) regarding
>          Plaintiff's designation of medical experts (Doc.
>          62-2), Plaintiff's response in opposition (Doc. 65),
>          and Defendants' reply (Doc. 67);
>
>    2.    Plaintiffs' Motion to Compel Discovery and
>          26(a)(1) Disclosure or, in the Alternative, to Strike
>          Defense, and for Sanctions (Doc. 63),[1] Defendants
>          response in opposition (Doc. 70);
>
>    3.    Plaintiff's Motion for Protective Order Due to
>          Injury and Resulting Hospitalization and
>          Discharge Plan (Doc. 73), seeking an Order
>          "relieving him of the obligation to travel to Kansas
>          for his deposition and the Fed.R.Civ.P. 35 medical

---

[1] Defendants filed a Motion for Extension of Time, seeking one additional business day in which to file their response to Plaintiff's motion. (Doc. 69.) Plaintiff did not respond to Defendants' motion and the time to do so has expired. D.Kan. Rule 6.1(d)(1). That Motion is, therefore, **GRANTED** as uncontested.

examinations to which this Court has ordered him
to submit until such a time as he is physically able
to do so" (Doc. 74, at 4), Defendant's response
(Doc. 77), and Plaintiff's reply (Doc. 78); and

4.    the Parties' Joint Stipulated Motion to Extend
Deadlines.  (Doc. 75.)

5.    Plaintiff's Motion to Withdraw Doc. 75, the prior
Joint Stipulated Motion to Extend Deadlines. (Doc.
83.)

6.    Plaintiff's Motion to Extend Deadlines.  (Doc. 85.)

7.    Motion to Withdraw as Counsel filed by both of
Plaintiff's Attorneys of Record.  (Doc. 87.)

Having reviewed the submissions of the parties, the Court is prepared to rule on

these pending motions.

## BACKGROUND

The Court has summarized the nature of this case and the claims of the

parties in its prior Orders of June 12, 2009 (Doc. 31), June 30, 2009 (Doc. 41), July

22, 2009 (Doc. 58), which are incorporated herein by reference.  Suffice it to say,

this case has been rife with discovery disputes and other issues that the parties have

been unable – or unwilling – to resolve between themselves in a professional

manner.

**A.**    **Facts Relevant to Defendants' Motion to Strike**.

Plaintiff previously filed a Motion to Extend Deadlines and For an

Expedited Telephonic Hearing on the Same (Doc. 51).  The parties participated in an expedited telephone conference with the Court regarding the motion on the afternoon of July 20, 2009.

Plaintiff contended that he had been seen by medical health care providers in Kansas, Colorado, New Jersey, and California and was having trouble accumulating all of his medical records.  (Doc. 58, at 2; Doc. 52, at 4.)  Thus, he stated that he had been unable to determine which medical providers he might wish to call at trial, making it impossible for him to comply with the Court's original August 3, 2009, deadline for submitting expert reports pursuant to Fed. R. Civ. P. 26.  (*Id.*)  Plaintiff proposed several new deadlines which would have extended the discovery cutoff in this case to February 2010.  (*Id.*)

Defendants opposed any extension of the medical expert deadline, arguing the experts should be designated well before Plaintiff's Rule 35 examinations, which were scheduled to occur the week of September 14, 2009.  (Doc. 58, at 2.) According to Defendants, this would allow some or all of those medical experts to be deposed, with transcripts available to the doctors who are to conduct the Rule 35 examinations.  (Doc. 54 at 3).

The Court indicated that Plaintiff was, in effect, seeking an advisory ruling that he would not need to produce expert reports pursuant to Fed. R. Civ. P.

26(a)(2)(B) for the myriad of treating physicians who have seen and treated him. (Doc. 58, at 8.)   The Court was unable, however, to give Plaintiff the requested assurance that no expert report(s) would be required from medical providers without knowing the extent or scope of the proposed testimony of the treating physicians at issue.  (*Id*.)

Quoting the decision of ***Sellers v. Butler***, No. 02-3055-DJW, 2006 WL 2714274 * 4, n.26  (D. Kan. Sep. 22, 2006), the Court stated that "where a treating physician is asked to review the medical records of another health care provider for the purpose of rendering opinion testimony, the physician may be considered 'specially retained' and therefore subject to the requirements of Rule 26(a)(2)(B), despite having also treated the patient."  (Doc. 58, at 9.)   The Court continued,

> In order to avoid any need to provide an expert report for a treating physician, Plaintiff's counsel must satisfy himself/herself that the nature and proposed scope of any proposed testimony of each of the treating medical providers would concern information, conclusions and opinions which were obtained in the course of treating the party and which were necessary to make in rendering this treatment.  If plaintiff proposes for any of the witnesses to go beyond this and to provide testimony based upon a review of medical records from other providers that was not a necessary part of the witness's care and treatment of plaintiff, then they would be considered to be a "retained" expert and a report would be required.

(*Id*., at 10.)

The Court then turned to the issue scheduling and agreed to a limited modification of the deadlines previously set in its Order on Motion to Stay and Revised Scheduling Order (Doc. 41). Included in the deadlines to be modified, Plaintiff was given until August 3, 2009, to identify pursuant to Fed. R. Civ. P. 26(a)(2)(A) *any treating physicians/providers he may use at trial to present evidence under Fed. R. Evid. 702, 703, or 705*. (*See* Doc. 58, at 12, emphasis added.) Thereafter, Plaintiff was given until September 4, 2009, to "provide the required written disclosures for any of the treating physicians/providers that were identified on August 3, 2009, who may be considered as ones 'retained or specially employed to provide expert testimony in the case,' all as defined by the above decisions of this court." (*Id.*, emphasis in original.) Plaintiff served his initial Fed.R.Civ.P. 26(a)(2)(A) medical expert disclosures on August 3, 2009. (Doc. 61, 62-2.) This list is the subject of Defendants' Motion to Strike.

**B.      Facts Relevant to Plaintiff's Motion to Compel (Doc. 63).**

Plaintiff's discovery requests at issue were served on Defendant Greyhound in April 2009.[2] Defendant served its "Objections to Discovery" on May 13, 2009.

---

[2] Plaintiff's Motion is uncontested regarding the factual statement that the discovery was served on April 10, 2009. *See* Doc. 64, at 2. *But see* Doc. 64-1, containing an April 29, 2009, certificate of service. No notice of service was filed with the Court, so the Court cannot verify the date with certainty. For purposes of this motion, the Court will assume the certificate of service attached to the discovery to be correct, with a date of service of April 29, 2009.

(Doc. 20; Doc. 64-2.)  As inferred from its title, this document contained only Defendant's objections to the discovery requests rather than substantive responses. (Doc. 64-2.)  Plaintiff sent a "golden rule" letter to defense counsel on May 27, 2009, discussing Plaintiff's various disagreements with Defendant's objections and requesting Defendant Greyhound provide additional responsive information, including privilege logs "at the time your clients submit their respective discovery responses."  (Doc. 64-3.)

On May 28, 2009, Defendant Greyhound filed its notices of service regarding its responses to Plaintiff's discovery requests.  (Doc. 25, 26.)  It is uncontested, however, that Plaintiff did not receive the documents produced by Defendant and referenced in those responses until June 4, 2009, June 8, 2009, and June 25, 2009.  (Doc. 64, at 2-3.)  It is further uncontested that Defendant's interrogatory answers were not mailed until June 4, 2009, despite the date of the Defendant's notice of service.  (Doc. 64, at 3; Doc. 64-4, at 7.)

Having not received a response to their May 27, 2009, "golden rule" letter, Plaintiff's counsel faxed correspondence to defense counsel on July 6, 2009, to follow-up with the unresolved discovery issues.  (Doc. 64-5.)  Plaintiff's counsel contends that on an undetermined occasion following this correspondence, he spoke with defense counsel by telephone.  (Doc. 64, at 4.)  Plaintiff's counsel

contends defense counsel indicated a responsive letter from Defendant would be forthcoming. (*Id.*) Plaintiff's counsel was left with the impression that defense counsel found Plaintiff's position regarding the discovery issues to be "untenable." (*Id.*)

The next communication between the parties occurred on July 22, 2009, when Defense counsel stated his belief that "all" discovery disputes had been "resolved." (Doc. 64-6.) Plaintiff's counsel responded on July 23, 2009, with a nine-page letter detailing the remaining discovery disputes. (Doc. 64-7.) Plaintiff's counsel indicated he had "no idea" what could possibly have given [defense counsel the] impression" that all discovery disputes had been resolved. (*Id.*) Having received no response from defense counsel, Plaintiff's counsel sent additional correspondence on July 29, 2009, inquiring as to Defendants' stance regarding "the deficiencies in the Defendants' discovery responses." (Doc. 64-8.)

Defense counsel sent correspondence to Plaintiff's counsel dated July 27, 2009, July 30, 2009, August 5, 2009, and August 10, 2009.[3] (Doc. 64-9.) Read in the context of Plaintiff's July 22 and 29, 2009, correspondence, defense counsel's letters of July 27 and July 30 clearly indicated that various disputes remained

---

[3] This letter, though dated July 27, 2009, was not received by Plaintiff's counsel until August 3, 2009. (Doc. 64, at 5, n.2.) The information contained in defense counsel's letters dated August 5 and August 10, 2009, is irrelevant to the issues presented in this motion.

unresolved between the parties regarding Plaintiff's discovery requests. (Doc. 64-9, at 1, 4-6.) Plaintiff filed the present motion to compel on August 20, 2009. (Doc. 63.)

**C.    Facts Relevant to Plaintiff's Motion for Protective Order (Doc. 73)**.

On February 20, 2009, the Court entered its Scheduling Order, which included a deadline of July 15, 2009, for the parties to complete all physical or mental examinations pursuant to Fed. R. Civ. P. 35. (Doc. 12, at 4.) Defendants filed a Motion for Medical Examination (IME motion) on May 27, 2009, requesting an Order requiring Plaintiff to appear for medical examination on June 17, 2009, by Dr. Michael Ryan at the office of Neurology Consultants Chartered in Shawnee Mission, Kansas. (Doc. 22.) Plaintiff responded in opposition to the motion, including a Motion to Strike and for Protective Order. (Doc. 27.) Plaintiff argued his medical condition was not in controversy and, further, if an IME was ordered, he should not have to return to Kansas for the examination. (*See* Doc. 28, at 4-7, 10.)

The Court issued its order on Defendants' IME Motion on June 12, 2009, holding in relevant part:

> This is clearly a case in which Plaintiff claims personal injury as a result of Defendants' negligence and Defendants generally deny their alleged negligence and/or culpability. (Docs. 6, 8.) Although Defendants

admit that Plaintiff was injured, they do not admit the nature and extent of Plaintiff's injury in their Answers. (*Id*.) Thus, because Plaintiff's physical condition is in dispute, the Court finds that the "in controversy" requirement of Rule 35 has been met.

> As for the 'good cause' element, Defendants argue that 'Plaintiff's medical records give indication that plaintiff may have systemic neurological problems as a result of diabetes or other pre-existing condition.' (Doc. 23, at 1.) Further, Plaintiff has brought claims against the Defendants for negligence, which he claims caused his injuries. That, in and of itself, places Plaintiff's 'injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.' *Schlagenhauf*, 379 U.S. at 119.

(Doc. 31, at 8 (internal citation omitted).) As such, the Court granted Defendants' IME motion and denied Plaintiff's Motion to Strike.

In so doing, the Court specifically called into question Plaintiff's apparent unwillingness to travel to Kansas for his IME and counsel's arguments as to why he should not have to do so:

> Plaintiff's counsel argues that Plaintiff 'is not medically fit to travel from California, where he resides, to Shawnee Mission, Kansas' for the medical examination. (*Id*., at 10.) The only evidence supporting this assertion is an affidavit *from Plaintiff's counsel*, indicating that Plaintiff told counsel that his pain is 'currently so severe' as to render him unable to travel. (Doc. 28-5, at 2.) The affidavit continues that Plaintiff told his counsel that he is 'certain that one or more of the physicians with whom he is treating for said pain and

> symptoms are of the same opinion.' (*Id*.) Suffice it to
> say, this is wholly insufficient to establish Plaintiff's
> inability to complete travel related to this lawsuit.
>
> Plaintiff made the choice to file the present lawsuit
> *in Kansas* and requested that the case be tried in the
> United States District Court for the District of Kansas in
> Wichita, Kansas. (Doc. 1, at 7.) Absent explicit, written
> travel restrictions placed by a licensed physician who
> continues to treat Plaintiff, the Court will not entertain
> any request to have Plaintiff's IME occur anywhere other
> than Kansas. Given Plaintiff's ability to travel from
> coast to coast for medical treatment (Doc. 30-2, at 4-5) –
> and the fact that Plaintiff will be required to travel to
> Kansas for any trial in the present matter – the Court will
> regard with skepticism any medical restrictions placed on
> Plaintiff's ability to travel.
>
> As such, the Court finds that Dr. Ryan's office in
> Shawnee Mission, Kansas, is an appropriate location for
> the IME will require that Plaintiff return to Kansas for
> the examination.

(Doc. 31, at 12-13.) The Court specifically and unequivocally instructed the

parties that Plaintiff's medical examinations were "to occur on or before **July 15,**

**2009**, in conjunction with the deadline set in the Court's Scheduling Order of

February 20, 2009." (*Id*., at 13, emphasis in original.)

On June 30, 2009, the parties engaged in a telephone hearing following an

additional Motion to Stay Proceedings, or in the Alternative, for a Protective Order

filed by Plaintiff (Doc. 35). In that motion, Plaintiff basically asked the Court to

reconsider its earlier Order "because the Court did not have the opportunity to

review [Plaintiff's treating physician's] documentation prior to the ruling." (Doc. 36, at 5.) Plaintiff's physician apparently placed him under restrictions that prohibited him from traveling for a period of six months from March 5, 2009. (Doc. 38, Ex. 5, at ¶ 5).

As a result, the Court made the following ruling:

> The Court has some concern as to why Plaintiff has been able on two occasions (apparently in late 2007 and early 2008) to travel cross-country, but now is supposedly unable to travel to Kansas for deposition and medical examination. Plaintiff's prior travel was much closer in time to the accident which is the subject of this action, and the Court has not been provided with any specific information as to why Plaintiff's level of pain now is worse than it was previously when he chose to make these two prior trips. However, the Court will grant a limited stay concerning any travel by Plaintiff for the time period he stated in his affidavit of June 29, 2009. Therefore, any deposition of Plaintiff or any Rule 35 examination of Plaintiff is hereby STAYED until September 5, 2009 (six months following March 5, 2009).

(Doc. 41, at 1-2.) Plaintiff was instructed to present himself in Kansas for his deposition and medical examinations between September 5, 2009, and September 30, 2009. (*Id.*, at 2.) The Court specifically stated that other discovery in the case was to "continue without further delay." (*Id.*, at 2.)

Plaintiff has now provided additional "explicit, written travel restrictions" in conjunction with his current Motion for Protective Order – only days before he was

to travel to Kansas for his deposition and medical examinations, and only days after his previous stay on travel had expired.  (Doc. 74, at 2.)

**DISCUSSION**

**A.    Defendant's Motion to Strike (Doc. 62).**

Defendants argue that the list of health care providers Plaintiff submitted on August 3, 2009, "represented to the Court that plaintiff is going to call 90 expert witnesses."  (Doc. 62, at 1.)  Defendants continue that "[t]he effect of such a designation precludes any reasonable discovery plan and trial preparation by the defendant" and was not made in good faith.  (*Id.*, at 2.)

As an initial matter, Plaintiff responds that Defendants' motion should be denied because defense counsel failed to confer with Plaintiff's counsel prior to filing it.  (Doc. 65, at 1.)  Defendants' reply is silent on the issue, thus Plaintiff's assertion is uncontested.  (Doc. 67.)

The duty to confer prior to filing a motion is contained in Fed.R.Civ.P. 37(a)(1) and D.Kan. Rule 37.2.  Fed.R.Civ.P. 37 implements a duty to confer in regard to motions to compel and, clearly, Defendants have not filed a motion to compel.

D. Kan. Rule 37.2, however, applies the duty more generally to "any motion to resolve a discovery dispute."  The pleading Defendants are attempting to strike

is Plaintiff's initial medical expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2)(A) (Doc. 62-2), thus making Defendants' motion to strike a "discovery motion." Rule 37.2 provides that "[t]he court *will not entertain any motion to resolve a discovery dispute* pursuant to Fed. R. Civ. P. 26 through 37 . . . *unless counsel for the moving party has conferred or has made reasonable effort to confer* with opposing counsel concerning the matter in dispute *prior to the filing of the motion*." D.Kan. Rule 37.2 (emphasis added). These requirements encourage parties to resolve their disputes prior to resorting to judicial intervention. Simply stated, Defendants have failed to comply with this local rule. As such, the Court "will not entertain" Defendants' motion.

Defendants' motion also fails on a substantive level. The Court notes that Plaintiff's list of medical providers appears excessive. The wording of the Court's July 22, 2009, Order, however, specifically anticipates that Plaintiff would pare down the initial list of medical providers to a smaller, more manageable number from whom required written disclosures would be provided by Plaintiff on or before September 4, 2009.[4] (*See* Doc. 58, at 11-12.) Defendants' Motion to Strike

---

[4] The Court notes that Plaintiff served notice of his "First Supplemental F.R.C.P. 26(a)(2) Medical Expert Disclosures" on September 4, 2009. (Doc. 68.) Because only the notice of service was filed, the Court has no way of determining the number of medical experts ultimately disclosed by Plaintiff.

(Doc. 62) is, therefore, both technically and substantively invalid.  Defendants'

motion is **DENIED**.

**B.      Plaintiffs' Motion to Compel (Doc. 63)**.

Plaintiffs' Motion to Compel Discovery seeks and order compelling

Defendants to file Fed.R.Civ.P. 26(a)(1) initial disclosures and to respond to,

and/or supplement their prior objections and responses to, Plaintiff's requests for

production and interrogatories.  (*See* Docs. 63, 64.)  Plaintiff contends Defendants

never filed initial disclosures and has numerous complaints regarding Defendants'

discovery responses (or lack thereof).  These issues will be addressed individually.

**1.      Defendants' initial disclosures**.

Plaintiff contends that "Defendants have never filed any 26(a)(1)

Disclosures, and instead attempted to rely on a single piece of correspondence as

claimed 'compliance' with the rule."  (Doc. 64, at 7; *see also* Doc. 64-10.)

Plaintiff continues that Defendants' correspondence "comports with neither the

letter nor the spirit of the rule."  (*Id*.)

Fed.R.Civ.P. 26(a)(1) details the parties' duty to provide certain disclosures

to the opposing party "without awaiting a discovery request."  Included in these

initial disclosures are the following categories of information:

> (i) the name and, if known, the address and telephone
> number of each individual likely to have discoverable

information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

. . .

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed.R.Civ.P. 26(a)(1).

Plaintiff specifically argues that Defendants must identify individuals likely to have discoverable information that Defendants may use to support their claims or defenses, produce "copies of the statements referenced within its response to Plaintiff's Interrogatory number 2,"[5] and make available "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to reimburse for payments made to satisfy the judgment." (Doc. 64, at 7.) Defendants contend they have identified the witnesses

---

[5] *See* Interrogatory No. 2, Doc. 64-2, at 1.

with discoverable information they may use to support their case, that they are not required to produce witnesses statements pursuant to Rule 26, and that "there is no policy that applies to plaintiff's claims" because Defendants "simply aren't insured at that level." (Doc. 70, at 1-2; *see also* Doc. 64-10.)

Defendants also argue is that Plaintiff's motion to compel is untimely pursuant to D. Kan. Rule 37.1. The local rule provides that

> **[a]ny motion to compel discovery . . . shall be filed and served within 30 days of the default or service of the response, answer or objection which is the subject of the motion**, unless the time for filing such motion is extended for good cause shown. Otherwise, the objection to the default, response, answer, or **objection shall be waived**.

D. Kan. Rule 37.1(b) (emphasis added).

The Court's Scheduling Order was entered on February 2, 2009, and indicates that the parties had previously exchanged Initial Disclosures. (Doc. 12, at 2.) The Court's docketing system includes a notice of service for Plaintiff's disclosures dated January 26, 2009. (Doc. 11.) Defendants' "certificate of compliance," stating their initial disclosures had been made, was not filed until March 9, 2009. (Doc. 14.) Defense counsel also sent correspondence to Plaintiff's counsel on June 17, 2009, responding to Plaintiff's inquiries regarding the status

and substance of Defendants' initial disclosures.[6] (Doc. 64-10.)

Plaintiff did not bring the present motion to compel (Doc. 64) until August 20, 2009 – six and a half months after the Scheduling Order stated the parties' disclosures had been exchanged, almost five and half months after Defendants filed their certificate of compliance, and more than two months after defense counsel sent the correspondence at issue.

As discussed below, Plaintiff's reply memorandum argues that "good cause" exists for his failure to file a motion to compel within 30 days of the default or service of the response, answer or objection which is the subject of the motion. (Doc. 80, at 2-6.) These arguments, however, focus on Plaintiff's efforts to convince Defendants to provide information responsive to Plaintiff's discovery requests. (*See id.*; *see also* Docs. 80-1, 80-2, 64-9.) There is no discussion in Plaintiff's briefs relating to any alleged good cause for failing to move to compel Defendants' Rule 26 initial disclosures within 30 days of a default or insufficient disclosure by Defendants. (*See id.*, *see also* Doc. 64, at 6-8.) As such, Plaintiff's untimely objection to Defendants' initial disclosures (or lack thereof) has been waived and his motion to compel is **DENIED** in regard to Defendants' Rule 26

---

[6] This is the correspondence on which Defendant relies as its initial disclosures and which Plaintiff argues is insufficient.

Initial Disclosures.[7]

**2.      Plaintiff's Interrogatories and Requests for Production**.

As stated above, Defendant's primary argument is that Plaintiff's motion to compel was untimely and, therefore, all of Plaintiff's objections were waived. (Doc. 70, at 1.)  Plaintiff's underlying motion to compel ignored the issue of the untimeliness.  (*See generally* Doc. 64.)  Although Plaintiff filed a reply to Defendants' response which addresses the issue of untimeliness and good cause, ironically the response itself was filed in an untimely manner.  *See* D.Kan. Rule 6.1(d)(1) (holding that "[r]eplies shall be filed and served within 14 days of service of the response).  Defendants' response was filed on September 8, 2009 (Doc. 70), making Plaintiff's reply due on or before September 22, 2009.  Plaintiff's reply, however, was not filed until September 25, 2009.  (Doc. 80.)  Although Plaintiff's reply spends more than three pages arguing why his underlying motion to compel was not untimely and/or attempting to establish "good cause" for the delay in filing, he offers no excuse or explanation as to why the reply was untimely.

The Court has discretion in determining whether good cause has been shown

---

[7]  In accordance with Fed.R.Civ.P. 26(e), Defendants are, however, required to supplement their initial disclosures as necessary.  Further, should Defendants not properly supplement their disclosures, they will be limited to the witnesses and exhibits enumerated in their June 17, 2009, correspondence.

to extend the deadline established in Rule 37.1.  *See Claytor v. Computer Assocs. Int'l, Inc.*, 211 F.R.D. 665, 666-667 (D. Kan. 2003) (holding that a district court will review a magistrates decisions on non-dispositive pretrial matters under a clearly erroneous standard).  In his reply, Plaintiff contends his counsel spent approximately two and half months after receipt of Defendants' first discovery responses attempting to resolve discovery disputes with defense counsel, "with some limited success."  (Doc. 80, at 3.)  According to Plaintiff's counsel, their "exhaustive, informal efforts to obtain complete and appropriate discovery responses and disclosures from Greyhound" should provide sufficient "'good cause' for not filing Plaintiff's motion prematurely, on June 9, 2009, 30 days after the responses were due."  (*Id.*, at 4.)  In reality, the deadline for Plaintiff's motion to compel regarding Defendant's discovery responses expired on June 29, 2009.[8] Even with the Court's calculations providing Plaintiff a later deadline by which to file his motion to compel, the Court still finds Plaintiff's motion to be untimely.

Plaintiff contends that these efforts to confer with defense counsel constitute "good cause" and were made because "the Court has made it patently clear that its

---

[8]  Plaintiff's discovery requests were served on April 29, 2009 (according to the certificate of service).  (Doc. 64-1, at 10, 21; *see also* n.2, *supra*.)  Thus, Defendant Greyhound's responses were due on May 29, 2009, making the deadline to file any motion to compel 30 days later on June 29, 2009.

strong preference is for the parties to informally resolve disputes rather than running to it each time a disagreement between them arises." (Doc. 80, at 3.) While this is the preference of the Court, it is, more importantly, a duty imposed by the District Court's rules. *See* D.Kan. Rule 37.2 (stating that the court "will not entertain" any discovery motions unless counsel for the moving party has made reasonable efforts to confer with opposing counsel regarding the subject of the motion). Further, the reason Plaintiff can attest to this Court's "strong preference" is because the present case has been rife with discovery disputes as a result of the parties' inability and/or unwillingness to compromise.[9]

Other courts in this District have found good cause for extending the Rule 37.1 deadline where the requesting party has been diligent in resolving the dispute and failed to file a motion to compel in good faith reliance on opposing counsels assurances that the information would be disclosed. *See **Allianz Ins. Co. v.***

---

[9] *See* Doc. 22 (Defendants' Motion for Order for Medical Examination); Doc. 27 (Plaintiff's Motion to Strike Motion for Order for Medical Examination); Doc. 31 (Court's Order regarding pending discovery motions); Doc. 34 (Defendants' Motion for Neuropsychological Examination); Doc. 35 (Plaintiff's Motion to Stay Case, or in the Alternative, for a Protective Order, and Request for an Expedited Telephonic Hearing on Same); Doc. 41 (Court's Order on Motion to Stay and Revised Scheduling Order); Doc. 47 (Defendants' Amended Motion for Medical Examination); Doc. 49 (Defendants' Amended Motion for Neuropsychological Examination); Doc. 51 (Plaintiff's Motion to Extend Deadlines and for an Expedited Telephonic Hearing on the Same); Doc. 58 (Court's Order regarding Plaintiff's Motion to Extend Deadlines); Doc. 62 (Defendants' Motion to Strike).

*Surface Specialities, Inc.*, Case No. 03-2470, 2005 WL 44534, at *1 (D. Kan. Jan.

7, 2005) (holding that "the conduct and statements of Plaintiff's counsel during the

relevant thirty-day time period, defense counsel's good faith reliance upon same,

and the exhaustive efforts made by defense counsel to resolve the dispute between

the parties all establish good cause for its sixteen-day delay in filing its motion to

compel").  This is not the case here.  Given the parties' history, the Court cannot

find that Plaintiff has established "good cause" for failing to timely file his motion

to compel.

Defendant Greyhound filed its objections to Plaintiff's discovery on May 13,

2009.  (Doc. 20; Doc. 64-2.)  Plaintiff sent his first "golden rule" letter on May 27,

2009 – almost three months before filing his motion to compel.  By Plaintiff's own

admission, he had to send follow-up correspondence to defense counsel on July 6,

2009 – almost six weeks after sending his "golden rule" letter – because he had

received no response from Defendant.  Given the contentious history of the parties,

as well as defense counsel's continued insistence that he believed all discovery

disputes to have been resolved, Plaintiff cannot establish good cause for allowing

expiration of the 30 day deadline to file his motion to compel.  *Cf. Sonnino v.*

*Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 638 (D. Kan. 2004) (rejecting

plaintiff's argument that she had established good cause for an extension of the

Rule 37.1 deadline where the record did not support her assertion that "she delayed filing her motion 'based on defendants' repeated promises they would supplement their responses'").  Plaintiff's Motion to Compel (Doc. 63) is, therefore, **DENIED** as untimely.

**C.     Plaintiff's Motion for Protective Order (Doc. 73).**

Plaintiff also brings his Motion for Protective Order Due to Injury and Resulting Hospitalization and Discharge Plan (Doc. 73), seeking an Order "relieving him of the obligation to travel to Kansas for his deposition and the Fed.R.Civ.P. 35 medical examinations to which this Court has ordered him to submit until such a time as he is physically able to do so."  (Doc. 74, at 4.) Defendant has responded (Doc. 77) and Plaintiff replied (Doc. 78).

As discussed previously, the Court denied a prior motion to strike filed by Plaintiff, in which he requested the Court deny Defendant's request for an IME and, in the alternative, sought a Protective Order placing certain restrictions and limitations on any such IME that occurred.  (*See generally* Doc. 28.)  One such requested restriction was that Plaintiff not be required to travel to Kansas for the examination.  The Court called into question Plaintiff's alleged medical basis for being unable to travel to Kansas.  (Doc. 31, at 12-13.)  Plaintiff was instructed that the Court would not entertain a request to have Plaintiff's medical examinations

occur anywhere other than Kansas "[a]bsent explicit, written travel restrictions placed by a licensed physician who continues to treat Plaintiff." (*Id*., at 12.) Plaintiff was also told the Court would "regard with skepticism any medical restrictions placed on Plaintiff's ability to travel" considering he had been able to travel from coast to coast for medical treatment. (*Id*.)

Plaintiff subsequently submitted additional medical records and asked the Court to reconsider its prior Order requiring him to travel to Kansas. (Doc. 35.) The Court expressed its concerns regarding Plaintiff's prior ability to travel closer to the time of the accident, but allowed a limited stay regarding Plaintiff's travel until September 5, 2009. (Doc. 41, at 2.)

Interestingly, Plaintiff has now provided "explicit, written travel restrictions" in conjunction with his current Motion for Protective Order only days before he was to travel to Kansas for his deposition and medical examinations – and only four days after his prior travel stay expired. (Doc. 74, at 2.) The Court is also concerned that at the time of Plaintiff's most recent injury, he was merely "making travel arrangements," "checking on travel schedules," and "planning to book a motel in Overland Park, KS." (Doc. 78, at 2.) The Court would have anticipated that by that time – just five days before Plaintiff was to be in Kansas – his travel arrangements from California would have progressed beyond "checking

on travel schedules" and "making travel arrangements."

Given the medical records (Doc. 74-3) submitted by Plaintiff, however, the Court will reluctantly **GRANT** Plaintiff's motion for protective order.[10]  Plaintiff will, therefore, not be required to travel to Kansas for his medical examinations and deposition until he is physically able to do so as indicated by medical health care professional who is providing on-going medical care.  This ruling significantly complicates the advancement of this case and the Court's analysis thus turns to the parties' Stipulated Motion to Extend Deadlines.

**D.    Parties' Stipulated Motion to Extend Deadlines (Doc. 75).**

Plaintiff's counsel was scheduled to depose Defendant Greyhound's designated representative, Terry Loggins, on September 11, 2009.  (Doc. 72.) Defense counsel apparently met with Ms. Loggins earlier that morning and determined she had "a driver file for Defendant Breedlove that was different from the drive file previously produced by Defendant Greyhound in response to Plaintiff's discovery requests."  (Doc. 76, at 2.)  The parties agreed that Plaintiff's counsel would need an opportunity to review the documents prior to Ms. Loggins' deposition and that the deposition should be continued.  (*Id*.)  As such, "[t]he

---

[10]  The Court finds the request for a brief telephonic hearing on this issue to be unnecessary and denies this request.

parties then agreed to utilize September 23, 2009, and October 21-22, 2009 to complete the depositions of Ms. Loggins and Defendants' other 30(b)(6) designees, who are located in Phoenix, Arizona and Dallas, Texas." (*Id*.) According to the parties, this requires modifications to the current discovery schedule, including the parties' deadlines for liability experts as well as the discovery cut-off. (*Id*.) The parties also requested that Defendant be permitted to file a supplemental response to Plaintiff's motion to compel and that Plaintiff be allowed time to reply to that supplemental response.

**E.     Plaintiff's Motion to Withdraw the Prior Stipulated Motion to Extend Deadlines  (Doc. 83)**.

Additional problems developed with a scheduled deposition of Defendant Breedlove, and Plaintiff then filed this unopposed motion which sought to withdraw the prior stipulated motion to extend deadlines (Doc. 75), and which also requested newly extended deadlines.  The proposed extended expert deadlines now moved into November and December, 2009, rebuttal expert deadlines into February 2010, and discovery cutoff into March, 2010.  (Doc. 84 at 1-2.)  No objection has been filed to this request to withdraw the prior stipulated motion and this motion is therefore **GRANTED** and Doc. 75 is therefore **WITHDRAWN**.

**F.     Plaintiff's Next Motion to Extend Deadlines (Doc. 85).**

On October 23, 2009, Plaintiff filed this motion seeking to extend deadlines

as follows: Plaintiff's expert disclosures extended to December 28, 2009,

Defendant's expert disclosures extended to January 28, 2010, rebuttal expert

disclosures extended to March 1, 2010, and discovery cutoff extended to April 16,

2010. (Doc. 85 at 1; Doc. 86 at 1-2.) No response or objection to the motion has

been filed and the time for such has expired. For the reasons set out in this Order,

any rescheduling of deadlines at this time is unrealistic, and the motion to extend

deadlines is hereby **DENIED.**

**G.     Motion by Plaintiff's Counsel to Withdraw as Counsel (Doc. 87).**

On November 2, 2009, both of Plaintiff's counsel in this case moved to

withdraw as counsel due to "irreconcilable differences" with Plaintiff. (Doc. 87 at

¶ 1.) From a review of the motion, it appears that counsel have complied with the

requirements of D. Kan. Rule 83.5.5(a) (1-3) by filing the motion, serving a copy

on the client and opposing counsel, and giving notice to Plaintiff of his

responsibilities for complying with all court orders and notifying him of pending

dates and motions. The certificate of service attached to the motion to withdraw

states that service has been made on Plaintiff by regular U.S. Mail and by Certified

Mail with Return Receipt Requested. (Doc. 87 at 3.) The motion did not,

however, show that Plaintiff's counsel complied with D. Kan. Rule 83.5.5(a)(4),

which requires counsel to provide proof of personal service of the motion or the

certified mail return receipt signed by the client, or an affidavit stating that the Plaintiff received a copy of the motion to withdraw. That subsection also provides that withdrawal shall not be effective until an Order authorizing withdrawal has been filed.

Plaintiff's counsel subsequently filed an additional Notice of Service of Notice of Intent to Withdraw, stating that they have served their Notice of Intent to Withdraw (and accompanying motion) via U.S. Certified Mail. (Doc. 91.) Attached to this notice are two return receipts. The first was delivered to Plaintiff in care of the Brookfield Health Care Center, and bears a receipt signature of an individual with the first name Priscilla, with an illegible last name.[11] (Doc. 91-1, at 2.) Clearly, this does not constitute a certified mail receipt "signed by the client." D. Kan. Rule 83.5.5(a)(4). The second return receipt was addressed to David Jones at his last known residential address in Long Beach, California. Although it contains an illegible signature, there is no printed name under the signature on the receipt. (Doc. 91-2, at 2.) Thus, the Court has no way of determining who signed for the delivery.

As such, to date, Plaintiff's counsel have not shown compliance with D. Kan. Rule 83.5.5(a)(4). That subsection also provides that withdrawal shall not be

---

[11] The printed name required under the signature is also illegible.

effective until an Order authorizing withdrawal has been filed.  Because proof of service has not yet been filed, no order allowing withdrawal can now be entered and the motion to withdraw is hereby **TAKEN UNDER ADVISEMENT** pending filed proof of service to Plaintiff.

**IT IS ALSO ORDERED** that all unexpired deadlines previously set in this case are hereby **VACATED** pending ruling on the pending motion to withdraw by Plaintiff's counsel.[12]  The Court will set new deadlines or hearings in this case when it rules on the motion to withdraw filed by Plaintiff's counsel.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike (Doc. 62) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Compel Discovery and 26(a)(1) Disclosure or, in the Alternative, to Strike Defenses, and for Sanctions (Doc. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time (Doc. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Motion for Protective Order Due to Injury and Resulting Hospitalization and Discharge Plan and Request for

---

[12]  This includes the pretrial conference set for February 22, 2010.  *See* Doc. 41; *see also* Doc. 90.

Brief Telephone Hearing (Doc. 73) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' Stipulated Motion to Extend Deadlines (Doc. 75) is **WITHDRAWN.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion (Doc. 83) to Withdraw the prior Stipulated Motion to Extend Deadlines, Doc. 75, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Extend Deadlines (Doc. 85) is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Withdraw as Counsel filed by both of Plaintiff's current counsel of record (Doc. 87), is hereby **TAKEN UNDER ADVISEMENT** pending the filing of the required proof of service on Plaintiff of the Motion to Withdraw.

**IT IS FURTHER ORDERED** that all unexpired deadlines previously set in this case, including the February 22, 2010 pretrial conference, are hereby **VACATED** pending further Order of the Court.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 13th day of November, 2009.

 s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge